UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT STEIG,

   Plaintiff,          Hon. Ellen S. Carmody

v.

                 Case No. 1:18-cv-511

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.
_____/

## OPINION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

   The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age on his alleged disability onset date. (PageID.187). He successfully completed high school and worked previously as a janitor, security guard, and truck driver. (PageID.386-87). Plaintiff applied for benefits on February 22, 2012, alleging that he had been disabled since July 15, 2011, due to hypertension and back and knee problems. (PageID.187-89, 208). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.121-85).

Following a January 24, 2013 hearing, ALJ Kevin Detherage determined that Plaintiff was not disabled. (PageID.55-63, 67-119). Following a decision by the Appeals Council not to review the matter, Plaintiff sought review in this Court. On September 30, 2015, the Honorable Ray Kent remanded this matter due to shortcomings in the ALJ's assessment of the administrative record. (PageID.486-502).

On November 10, 2016, ALJ Laura Chess conducted a hearing with testimony being offered by Plaintiff, Plaintiff's wife, and a vocational expert. (PageID.887-944). In a written decision dated March 8, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.374-88). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.880-85). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2015. (Tr. 376); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the cervical and lumbar spine; (2) left knee cyst and chondromalacia; (3) right knee fissures and irregularity of the cartilage; (4) bilateral carpal tunnel syndrome; (5) obesity; and (6) hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.377-80).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through the date Plaintiff's insured status expired, Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can stand/walk for 2 hours and sit for six hours; (3) he requires a handheld assistive device, such as a cane, for ambulation; (4) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (5) he can occasionally balance, stoop, kneel, crouch, and crawl; (6) he can frequently, but not constantly, handle, finger, and feel with his bilateral upper extremities; (7) he can frequently, but not constantly, tolerate exposure to extreme heat, extreme cold, and humidity in the work setting; (8) he can occasionally use vibratory tools; (9) he requires hearing protection if working in a very loud environment, but experiences no communicative limitations if working in a quiet or moderate noise environment; and (9) he cannot work at unprotected heights or in the vicinity of dangerous machinery. (PageID.380-81).

The ALJ found that through the date Plaintiff's insured status expired he was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 320,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.930-35). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The vocational expert also testified that if Plaintiff were further limited to sedentary work, including all the other limitations, there still existed 55,000 jobs nationally which Plaintiff could perform. (PageID.935-37). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.**         **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> The medical evidence shows that the claimant has some musculoskeletal impairments, which are aggravated by obesity, but these do not restrict him to sedentary work or preclude the performance of work on a regular and continuing basis. In February 2007, Bret Bielawski, D.O., a consulting physician, evaluated the claimant. (Exhibit 1F). The claimant reported having a vertebral compression fracture as the result of being hit by a vehicle as a pedestrian. The claimant was obese at 277 pounds. Musculoskeletal examination revealed no evidence of crepitance or effusion. Both knees were very painful with range of motion. Both knees were enlarged and the left was "more loose than the right." There was full fist and decreased grip strength bilaterally. The claimant's dexterity was unimpaired. Jamar dynamometer showed 20 pounds on the right and 40 pounds on the left. The claimant was able to button clothing and open a door. The claimant had moderate difficulty getting on and off the examination table. The claimant was unable to walk heel or toe and he had severe difficulty squatting. The claimant was unable to touch the floor. He was very tender in the upper sacral area and lower sacroiliac area as well as the neck was tight. There was absence of lordosis in the cervical and lumbar spine. Straight leg raising was negative. Neurological examination was mostly normal except the claimant had hyporeflexia in both triceps. Additionally, the claimant walked with a small-stepped gait with a mild left-sided limp without the use of an assistive device. (*Id.*). Dr. Bielawski found the claimant to have intact strength in all extremities. (*Id.*).
>
> During the relevant period, in February 2012, the [claimant] reported back pain radiating into both legs. (Exhibit 3F, p. 7). The claimant reported being unable to tie his shoes or being able to put on socks. The claimant reported mild relief with narcotic pain medication. (*Id.*). His body mass index (BMI) was 44.85, which is in the obese range. (*Id.* at 8). Physical examination revealed pain with palpation of the lower lumbar spine. There was no pain with palpation or flexion or extension of either knee. There was no crepitus in either knee. The claimant walked with an antalgic gait using a cane for assistance. (*Id.* at 9). In March 2012, examination

revealed that the claimant reported pain with range of motion of his neck. (Exhibit 3F, p. 2). The claimant had great difficulty lying supine and getting up. (*Id.*). The claimant had normal coordination. (*Id.* at 3).

In March 2012, an MRI of the cervical spine showed degenerative disc disease at C5-C6 with prominent osteophyte disc in both lateral recesses without central stenosis. (Exhibit 2F, pp. 3-4). There was additional spurring from the uncovertebral joints contributing to stenosis of the foramina bilaterally. (Id.). An MRI of the lumbar spine showed degenerative disease without focal disc herniation or nerve root displacement. (Exhibit 2F, pp. 4-5). An MRI of the claimant's left knee showed mild chondromalacia of the lateral femoral tibial joint and patellofemoral joint. (Exhibit 2F, p. 1). There was a small popliteal cyst. There was no evidence of meniscal tear or internal derangement. (*Id.*). An MRI of the right knee showed a fissure within the weight-bearing lateral tibial cartilage and another deep fissure in the central trochlear cartilage. (*Id.* at 2). There was mild superficial irregularity of the patellar cartilage. (*Id.*). There was no evidence of meniscal tear or internal derangement. (*Id.*). Later April 2014 x-rays of both knees were normal. (Exhibit 12F, p. 32). X-rays of the lumbar spine showed small endplate osteophytes. (*Id.* at 38).

In May 2012, Karen Krieger, M.D., evaluated the claimant on a consulting basis. (Exhibit 6F). Examination revealed no tenderness of the cervical spinal processes or paravertebral muscle spasm. The claimant had limited range of motion of the cervical spine, lumbar spine, and hips. Examination of the lumbar spine revealed no apparent kyphosis or scoliosis. There was minimal paravertebral muscle spasm or tenderness of palpation to the spinous process. Examination of the shoulders, elbows, and hips were generally unremarkable. Examination of the wrists reveled no crepitus, tenderness, swelling, effusion, laxity, or nodules. Phalen's and Tinel's signs were negative. The claimant's grip strength was 23.8 pounds on the left and 21.4 pounds on the right. There was no erythema or warmth in the hands. There was no evidence of muscle atrophy in the hands. Neurological examination revealed intact sensation and normal reflexes. Other neurological findings were generally unremarkable. The claimant was able to walk on heels and toes. He was able to tandem walk. The claimant was able to stand on either leg alone. He ambulated with a slow, cautious otherwise normal gait. Dr. Krieger noted that the claimant's gait was not wide based, slapping, slow, shuffling, unsteady, lurching, or

unpredictable. The claimant's gait was not compensated and the claimant did not walk with a limp. The claimant was stable. . .and appeared comfortable in a seated position and uncomfortable in a supine position. Straight leg raising was negative bilaterally and positive for low back pain at 30 degree elevation in the supine position. Dr. Krieger noted that the clinical evidence did not support a need for a walking aid. (*Id.*).

In May 2013, straight leg raising was negative. (Exhibit 11F, p. 5). The claimant had normal strength, bulk, and tone in all muscles of extremities. Palpation of the low back was tender. (*Id.*). In November 2013, the claimant was instructed to lose weight, walk daily, and work on core strengthening. (Exhibit 11F, p. 8). In May 2014, Mark Del Castillo, M.D., a treating physician, noted that the claimant was a poor historian and gave inconsistent answers regarding his back. (Exhibit 13F, pp. 8-9). Dr. Castillo noted that there was no surgical need to address his back pain. Dr. Castillo informed the claimant that his low back pain was weight related. Dr. Castillo noted that the claimant claimed to follow a diet but he did not show results. (*Id.*). The claimant ambulated very well. (*Id.* at 10).

In March 2016, Tama Abel, M.D., a consulting physician, evaluated the claimant on a consulting basis. (Exhibit 8F). The claimant reported that he was able to drive and [was] generally independent with his activities of daily living. The claimant noted that he needed occasional assistance with bathing, using the toilet, and dressing. The claimant reported being able to prepare meals occasionally. He reported being able to sit or stand for about 10 minutes at a time. The claimant reported being able to open a door and use a telephone and write with a utensil. The claimant insisted he was unsteady without his cane, but he took steps about the room without his cane. The claimant was steady when balancing on both feet. When using his cane, he gripped it tightly with his right hand and leaned on it heavily. He moved slowly with all activities. The claimant's grip and pincher strength was intact and measured at 4/5 with adequate pincher grasp. The claimant's dexterity was unimpaired as he was able to pick up a dime, button clothing and tie a shoelace. The claimant had no difficulty getting on and off the examination table. The claimant did not attempt to heel and toe walk, squat and arise, balance, or tandem walk. The claimant declined to crawl or kneel. Dr. Abel noted that it was unclear as to whether the claimant provided his best effort during range of motion testing. The claimant was very resistant to hip range of motion testing noting pain. Range of motion testing revealed abnormalities with doroslumbar spine,

cervical spine, and hips (though most hip testing was not performed). Neurological examination revealed full motor strength with exception of the hands, which was 4/5. The doctor noted that this finding was inconsistent with the claimant's ability to very firmly grip his cane earlier. The claimant described numbness in the fourth and fifth digits at both hands. The claimant reported numbness in the left lower extremity from the groin to the knee. Straight leg raising was positive in the seated and supine position. The doctor concluded that the claimant was likely experiencing mechanical back pain. There was no evidence of nerve root irritation. Dr. Abel noted that it was difficult to determine the true degree of the claimant's pain due to limited participation and observed inconsistencies. (*Id.*).

At the hearing, the claimant contested some items in Dr. Abel's report at 8F. The claimant testified that he did not perform certain activities noted by Dr. Abel. I have considered the claimant's allegations regarding the potential inconsistencies in Dr. Abel's report; however, I also note that Dr. Abel's findings are generally consistent with the findings of Dr. Bielawski (Exhibit 1F) and Dr. Krieger (Exhibit 6F).

The evidence regarding the claimant's back pain indicates that it is aggravated by the claimant's obesity, and treatment records indicate that the claimant has not followed medical advice in terms of losing weight. At the hearing, the claimant testified that he weighed between 360 and 370 pounds. The preponderance of evidence indicates that the claimant has some back pain and the findings regarding his need for an assistive device are inconsistent. Nevertheless, I have accounted for the claimant's back and knee impairments, exacerbated by his obesity, by restricting him to light work with the above-stated postural limitations. I have also allowed the claimant to use a handheld assistive device for ambulation. These restrictions are consistent with the preponderance of medical findings. Despite these restrictions, there exist jobs in the national economy that the claimant is capable of performing (discussed below).

The claimant has a history of carpal tunnel syndrome. A March 2012 EMG study of the bilateral upper extremities revealed mild medial neuropathy in both carpal tunnels. (Exhibit 3F, p. 37). There was evidence of mild demyelinating injury to the median sensory nerve and the motor nerve in the right carpal tunnel. In the left carpal tunnel, there was evidence of a mild demyelinating injury to the

median motor nerve. (*Id.*). Despite these findings, Dr. Krieger and Dr. Abel noted that the claimant had good functionality of the hands but with some reduced strength. (Exhibits 6F and 8F). The evidence does not show that the claimant has a history of dropping items. Moreover, Dr. Abel noted that the claimant was able to grip his cane very tightly when ambulating at the examination. (Exhibit 8F). I have accounted for the claimant's carpal tunnel syndrome by limiting the claimant to performing light work and by limiting his fingering, handling, and feeling as noted above. These limitations are consistent with the preponderance of evidence.

The claimant has a history of hypertension, but the evidence does not disclose any disabling functional limitations. In March 2012, the claimant had complaints of hypertension. (Exhibit 3F, p. 1). The claimant's hypertension was noted as unchanged and uncontrolled. The claimant reported associated headaches, neck pain, and peripheral edema. It was noted that current treatment provided mild improvement. There were compliance problems including diet. (*Id.*). In April 2012, the claimant's blood pressure was normal. (Exhibit 4F, p. 3). In May 2012, cardiovascular examination was normal although the claimant's blood pressure was elevated. (Exhibit 6F). I have accounted for the claimant's hypertension by limiting him to performing light work with the above-stated postural and environmental limitations.

(PageID.382-85).

## II.        The ALJ's RFC Assessment is Supported by Substantial Evidence

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted above, the ALJ found that Plaintiff required a handheld device, such as a cane, for ambulation. Plaintiff argues that he is entitled to relief because this finding is inconsistent with the performance of light work.

In support of his argument, Plaintiff relies on this Court's recommendation in *Love v. Commissioner of Social Security*, 605 F.Supp.2d 893 (2009), subsequently adopted by the Honorable Paul L. Maloney. In *Love*, the undersigned noted that there existed an inconsistency between the ALJ's conclusion that the claimant required a hand-held assistive device to ambulate, yet could also lift and carry up to 20 pounds. *Id.*at 907. However, contrary to Plaintiff's argument, the Court in *Love* did not conclude that the performance of light work was categorically incompatible with the use of a hand-held assistive device. Instead, as the Court stated, the fundamental shortcoming in the ALJ's decision in *Love* was that this apparent inconsistency was not addressed or explained by the ALJ. Accordingly, the undersigned recommended that the be remanded to the Commissioner. *Ibid.*

As other courts have recognized, however, while there may exist an apparent inconsistency between light work and the use of a cane, such does not preclude a finding that such an RFC is nevertheless supported by substantial evidence where the issue is expressly examined. *See, e.g., Bates v. Commissioner of Social Security*, 2016 WL 4607566 at *3 (W.D. Mich., Sept. 6, 2016); *Cotton v. Commissioner of Social Security*, 2016 WL 80667 at *4 (W.D. Mich., Jan. 7, 2016). In this case, the vocational expert specifically considered the impact of Plaintiff's need to use a hand-held assistive device to ambulate and how such impacted his ability to perform work activities. (PageID.933-37). In light of such, the vocational expert significantly reduced his assessment as to the number of jobs which Plaintiff could perform despite his limitations. (PageID.933-37). Plaintiff has identified no other shortcoming with the vocational expert's testimony or the ALJ's subsequent analysis. Accordingly, this argument is rejected.

Moreover, even if the Court were to adopt the sort of categorical rule for which Plaintiff advocates, precluding light work by individuals who use a cane, the result would still be the same. As also noted above, the vocational expert testified that if Plaintiff were further limited to the performance of sedentary work, there still existed a significant number of jobs which Plaintiff could perform. Plaintiff has presented neither argument nor authority, that the use of a cane is somehow inconsistent with the performance of sedentary work, either as a general proposition or in this case in particular.

### III.     Plaintiff is not Disabled Pursuant to the Grids

As of the date his insured status expired, Plaintiff was less than one month away from reaching the age of 50. Plaintiff argues that the ALJ erred by failing to consider his claim as if he had attained 50 years of age. Plaintiff argues that if the ALJ had done so he would have been deemed disabled pursuant to the Medical-Vocational Guidelines (aka the Grids). The shortcoming with Plaintiff's argument, however, is that as Plaintiff acknowledges, this argument is premised on an RFC finding limiting him to sedentary work. As already noted, however, the ALJ found that Plaintiff could perform a limited range of light work. Plaintiff has failed to demonstrate any error in this finding. Accordingly, this argument is rejected.

### IV.     The ALJ Properly Considered Plaintiff's Obesity

Finally, Plaintiff argues that the ALJ failed to comply with Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002). Specifically, Plaintiff argues that the ALJ erred by failing to adequately consider his obesity and the effect of such on his RFC. Plaintiff argues that the ALJ "dismissed" his obesity and "engaged in a limited discussion" of how such impacts his RFC.

As the Sixth Circuit has held, Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff's obesity constituted a severe impairment and examined the entire record in assessing Plaintiff's residual functional capacity. The evidence of record does not support the argument that Plaintiff's obesity, either alone or in combination with her other impairments, impairs him to an extent greater than that recognized by the ALJ. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: May 15, 2019                                              /s/ Ellen S. Carmody
                                                                                      ELLEN S. CARMODY
                                                                                      United States Magistrate Judge